Glen Ray **ROZNOVSKY**,
Petitioner-Appellant,

v.

W. J. **ESTELLE, Jr.**, Director of Texas
Department of Corrections,
Respondent-Appellee.

No. 76–3449
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1977.

As Modified on Denial of Rehearing
April 1, 1977.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

John J. C. O'Shea, Lubbock, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Austin, Tex., W. Barton Boling, Asst. Atty. Gen., El Paso, Tex., David M. Kendall, Jr., First Asst. Atty. Gen., Joe B. Dibrell, Jr., Gilbert Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, GEE and TJOFLAT, Circuit Judges.

WISDOM, Circuit Judge:

The petitioner, Glen Ray Roznovsky, is a state prisoner seeking habeas corpus relief under 28 U.S.C. § 2241 et seq. (1970) from his conviction in a Texas state court for the sale of a dangerous drug. Roznovsky was convicted by a jury on October 18, 1973, in Lubbock County, Texas, of the felony offense of unlawful sale of a dangerous drug, lysergic acid diethylamide (LSD). His conviction was affirmed by the Texas Court of Criminal Appeals. *Roznovsky v. State,* (No. 49,622, March 26, 1975) (unpublished) (R. 23–25).

The petitioner has two principal grounds for challenging his conviction. He contends that he was denied his Sixth Amendment right to compulsory process for obtaining witnesses and his Fourteenth Amendment right to due process of law in that the trial court permitted two witnesses subpoenaed by him to assert "blanket" privileges against self-incrimination, thereby preventing the petitioner from establishing a defense of entrapment. In addition, the petitioner contends that he was denied his Fourteenth Amendment right to due process of law as a result of inflammatory sidebar remarks and disparaging comments by the prosecutor that separately and cumulatively prejudiced his defense.

The Court of Criminal Appeals of Texas considered the petitioner's claim on direct appeal. As to the first contention, the court concluded that the record, including the petitioner's own testimony, indicates that the two subpoenaed witnesses, Stegall and Parks, might well have been liable for criminal prosecution arising out of the circumstances incident to the sale of the LSD. That court approved the trial court's acceptance of the witnesses claim to the privilege against self-incrimination. As to the second contention the court affirmed the trial court's denial of the application for a writ of habeas corpus without a hearing. The trial judge concluded that the prosecutor's remarks, his course of conduct, and improper questions to which objections by the defense counsel were sustained did not cumulatively or individually prejudice the rights of the defendant. The United States District Court for the Northern District of Texas concurred in these conclusions. We affirm.

A review of the facts will establish the background for the petitioner's contention that allowing the witnesses Parks and Stegall to assert a "blanket" Fifth Amendment privilege as to all of their testimony prevented him from presenting significant evidence in support of the defense of entrapment thereby violating his rights to due process and compulsory process. Roznovsky was convicted of the sale of LSD primarily on the testimony of R. R. Tucker, an undercover agent of the Texas Department of Public Safety, who stated that he purchased from the petitioner ten capsules of a substance the State's chemist identified as LSD. He testified that Ron Parks and "somebody named Joe" were present at the time of the purchase. Parks and Joe Stegall were the two witnesses whose testimony the petitioner sought to elicit. The undercover agent also stated that he had a minimum of two other meetings with the petitioner at the petitioner's residence and that he purchased marijuana from Roznovsky prior to the LSD sale. He noted that on those occasions others present in the house, including Stegall and Parks, possessed and were smoking marijuana. In his own defense the petitioner testified that although he had been engaged in the sale of drugs in the past, he was no longer involved in that activity at the time of his contacts

with Tucker. He stated that he had agreed to "make the connection" for the undercover agent and a friend, Teddy Joe Williams, who introduced him to the agent, only in response to constant cajoling, nagging, and begging by the agent and Williams. The petitioner contends therefore that he was entrapped by the undercover agent and Williams and that the testimony of Parks and Stegall would support that defense.

A conflict between a defendant's Sixth Amendment right to compulsory process and a witness's Fifth Amendment privilege against self-incrimination always presents difficult issues for resolution. Here the petitioner argues that the court should have held a hearing to inquire into the extent to which the witnesses could have provided the testimony that the petitioner needed to exonerate himself without also incriminating themselves. The petitioner contends that the trial court abdicated its responsibility for evaluating the justifications for the claim of privilege as to the various parts of the testimony sought.

The petitioner emphasizes that in *Hoffman v. United States,* 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, the Supreme Court establishes that the witness may not refrain from responding to questions merely because he asserts the privilege. Rather, it is for the court to determine whether his silence is justified under the doctrine. The Court also stresses however that the standard for establishing a justification for the privilege is not high:

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence".

*Id.* at 486–487, 71 S.Ct. at 818. The two witnesses, Parks and Stegall, were not called until after the State's witnesses, in-cluding R. R. Tucker, had testified. After the court permitted each of the two witnesses in turn to claim the privilege against self-incrimination, the defense attorney objected to the court's refusal to grant them immunity. Later, after the defense had closed, Roznovsky moved to reopen his case in order that Parks and Stegall could be recalled. He sought to require them to claim the privilege against self-incrimination as to each question posed by the defense. The trial court denied that request. After the court refused to grant the two witnesses immunity, the petitioner assumed the witness stand. He stated that Parks and Stegall were present along with others on the occasions when the undercover agent, R. R. Tucker, came to his house and that they were smoking marijuana at those times. He testified that Tucker and Williams insisted "on us selling him some drugs, or where we could get him some drugs", thereby implying the connection of others in the sale. He testified to the sale of marijuana and the later sale of LSD to Tucker. Stegall, Parks, the petitioner, and another were living at the petitioner's residence at the time of the sales. From the testimony of either the defendant or agent Tucker, the trial judge could have reasonably concluded that questions put to Stegall and Parks about the events surrounding the LSD sale might result in self-incriminating answers, particularly because the privilege extends not only to answers that would themselves support a conviction but also to those that would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. *Hoffman v. United States,* 341 U.S. 479, at 486, 71 S.Ct. 814, 95 L.Ed. 1118.

The petitioner errs in relying on *United States v. Gomez-Rojas,* 5 Cir. 1975, 507 F.2d 1213, *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42, in support of his contention that the trial judge should have held a hearing to consider the facts surrounding the claim of privilege. In *Gomez* we required a hearing on remand because there the court excused the witness from testifying because of the witness's bald assertion of the Fifth Amendment privilege. Here

the court was able to evaluate the circumstances surrounding the claim on the basis of uncontradicted testimony by the petitioner and others on the connection of Stegall and Parks with illegal acts. Therefore, we conclude that the trial judge was not in error in excusing the witnesses without further inquiry; and the record supports the finding of the Court of Criminal Appeals of Texas that Stegall and Parks could have been liable for criminal prosecution arising out of the circumstances of the sale.

 In support of the second challenge to his conviction, the petitioner contends that there were more than twenty incidents of prosecutorial misconduct, which amount to a violation of his due process right to a fair trial. An examination of the record reveals a number of side-bar remarks in the presence of the jury that redound to the discredit of the particular prosecutor. Evidently some of the remarks were accompanied by gestures or non-verbal expressions that are not reflected in the record. The Supreme Court established more than forty years ago in *Berger v. United States,* 1935, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321, the parameters of a prosecutor's responsibility at trial:

> [w]hile [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Although the prosecutor here may be deserving of criticism for remarks and gestures reflective of excessive zeal, under the standard set forth in *United States v. Rhoden,* 5 Cir. 1972, 453 F.2d 598, *cert. denied,* 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334, the degree of improper conduct was not of constitutional dimensions. Viewing the record as a whole, including the remarks, arguments, and questions on cross-examina-

tion posited by the prosecutor, in the context of a hotly contested trial and in light of the cautionary instructions given by the trial court, we conclude that no impropriety occurred great enough to have prejudiced the substantial rights of the accused. *Id.* at 600.

All contentions of the petitioner that have not been treated here have been determined to be without merit.

The judgment of the district court denying the petitioner's request for a writ of habeas corpus is

AFFIRMED.